No. 12512

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

---

PUBLIC SERVICE COMMISSION OF MONTANA,
LOUIS G. BOEDECKER, Chairman; ERNEST
C. STEEL. and ROBERT E. McTAGGART, as
Members thereof and constituting said
Public Service Commission,

Applicant,

-vs-

THE DISTRICT COURT OF THE FIRST JUDICIAL
DISTRICT OF THE STATE OF MONTANA, IN AND
FOR THE COUNTY OF LEWIS AND CLARK, and the
HONORABLE PETER G. MELOY, Presiding Judge,

Respondent.

---

ORIGINAL PROCEEDING:

Counsel of Record:

For Applicant:

William E. O'Leary argued, Helena, Montana

AMICUS CURIAE

Honorable Robert L. Woodahl, Attorney General, Helena,
Montana

For Respondent:

C. W. Leaphart, Jr. argued, Helena, Montana
James A. Robischon argued, Butte, Montana

---

Submitted: May 17, 1973

Decided: JUN - 8 1973

Filed: JUN - 8 1973

Thomas J. Kearney
Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an original proceeding brought by the Public Service Commission of Montana seeking a writ of supervisory control directed to the district court of the first judicial district, Lewis and Clark County, Judge Meloy presiding. The writ sought would direct the respondent court to sustain objections to interrogatories submitted by plaintiffs in district court causes No. 36398 and No. 36402.

Plaintiffs in the district court are: The Anaconda Company; Anaconda Aluminum Company; Hoerner Waldorf Corporation of Montana; City of Helena; and C. W. Leaphart, Jr. Plaintiffs were protestants to certain electric and gas rate increases granted The Montana Power Company by relator Public Service Commission by its order No. 4068, in Docket No. 6100. Plaintiffs filed suit seeking a review of that order under section 70-128, R.C.M. 1947.

Plaintiffs, purportedly acting under Rule 33, M.R.Civ.P., served written interrogatories upon the Public Service Commission. Objections, with a supporting brief, to all interrogatories were filed by the Commission. Oral argument was had before the respondent district court. Following oral argument, the court issued its order with a "Memorandum Opinion". The Commission's objections were sustained to some thirty-five interrogatories in one cause, and ordered answers to be made to four. In the other cause, objections were sustained to two, and answers ordered on some thirty-six interrogatories.

Essentially, the Commission's objections were that it was acting in a legislative capacity and all of its proceedings and methods of determination are exempt and privileged except as to its formal order, No. 4068. Additionally, section 70-128, R.C.M. 1947, which provides for a review of actions of the Public Service Commission, is a special proceeding excepted by Rule 81, M.R.Civ.P.,

from the civil rules insofar as it is inconsistent or in conflict as listed in Table A of the Rules of Civil Procedure. Since section 70-128 authorizes a review, no new or additional evidence can be considered independent of the Commission's determination.

On ex parte application, this Court granted an alternative writ and return was made, briefs filed, and oral argument had. The return includes a motion to quash the alternative writ on the ground that supervisory control is not proper, as the remedy of appeal is adequate.

The primary issue is whether the Commission is required to answer interrogatories relative to the methods and procedures utilized in reaching a decision to allow a rate increase.

Commission Order No. 4068 in Docket No. 6100 is a fifty-three page order. It is divided essentially into two parts, gas and electricity. As to each of these, it includes findings of fact. The findings reflect the total valuations used by the Commission, the net earnings, the rate of return presently, the rate of return found fair, and the amount of increase needed; together with a schedule of rates and charges. Preliminary to these findings, the Commission recited some detail of the Company's valuations put into evidence and what consideration the Commission gave in reaching its results. The order recites considerable matters entering into the Commission determinations.

The interrogatories under consideration here are lengthy. A few samples will show the general thrust. The interrogatories sought: present value of gas _production_ facilities; _transmission_ facilities; _distribution_ facilities; recoverable gas reserves; volume of gas reserves; original cost of gas reserves; amount eliminated from valuation for future expectations of inflation; reserves and accruals found available for working capital needs, etc. Each of the items sought was an item included or excluded from the total amounts found by the Commission.

The trial court filed a memorandum which, curiously, quoted from the dissenting portion of Cascade County Consumers Assn. v.

Public Service Commission, 144 Mont. 169, 204, 394 P.2d 856, that "further clarification should be had as to exactly what was included in the rate base". The trial court in its memorandum then went on to say that to make a meaningful review of the transcript of the evidence and the exhibits before the Commission it, the court, needed the details making up the Commission's findings of fact.

The trial court in its return here described the record before the Public Service Commission as "voluminous and extensive" and the order being reviewed as "cryptic and brief". It then went on to observe that each interrogatory which seemed to invade or delve into the mental processes of the Commission had been stricken, but interrogatories with respect to questions of fact had been allowed. Respondent court observed that the answers to the interrogatories would "merely isolate certain factual matter which, if answered, would save the time of the Court and expedite the proceedings".

Be that as it may, it may all be so, the evidence presented to the Commission requires the court to review it all under the normal rules. To say that individual items going to make up the whole is not a part of the mental processes of the Commission is not realistic. If the whole as found by the Commission is supported by the record, the individual parts and the various methods of computation to arrive at the whole must certainly be a part of the mental processes. Certainly in considering legislative proceedings, the myriad of detail going to the thought processes of individual legislators cannot be the subject of interrogatories. We make it clear that we are not dealing with parties to the action, but rather with the Body whose decisions are being reviewed.

Previously herein, we have set forth examples of the general thrust of the interrogatories. Three of the examples seek present value of "recoverable gas reserves", volume of "recoverable gas reserves", and original cost of gas reserves. In the Commission's order, under Part A, it stated:

"Included in the RCN and RCND valuations were recoverable natural gas reserves of the company. These reserves were valued at 5.13 cents per MCF. This value of 5.13 cents per MCF was based on two transactions occurring in 1971.

"The company had purchased 2.79 billion cubic feet of recoverable gas reserves in the South Devon field at a cost of $152,000. The company also purchased 5.26 billion cubic feet in the Lait field in southern Canada at a cost of $261,150. The weighted average cost of these purchased reserves was 5.13 cents per MCF. This unit value was then used for all the recoverable gas reserves in place of the company in arriving at the reproduction cost valuations of the company.

"The commission is of the opinion that these reserves are of tremendous importance to the customers of the company and certainly have a value in any reproduction cost determination of the company's natural gas properties. No other unit valuation was proposed at the hearings.

"The change in the natural gas reserve picture adds to the tremendous importance of the natural gas reserves of the company. In 1950 the known reserves of gas were 185 trillion cubic feet (TCF) and the annual production of gas was 6.9 TCF, so that reserves were almost 27 times annual use. Reserves climbed slowly until 1968, but annual use climbed faster.

"By 1960 the reserve to production ratio had declined to 20 times, and by 1965 to 17.5 times. In 1971 annual use was over 22 TCF. Excluding Alaska, reserves were 247 TCF and the ratio of reserves to production dropped to 11. Including the Alaskan reserves would bring the 1971 ratio to only 12.6.

"Only recently the Federal Power Commission authorized the importation of LNG from Algeria. After liquefaction, cryogenic transportation, and regasification costs are considered it is estimated that this gas will be delivered to eastern pipelines at about $1.00 per MCF. The commission points this out merely to emphasize the importance of the gas reserves of the company to the consumers.

"The commission will include the natural gas reserves in its determination of the reproduction cost depreciated valuation of the company's natural gas properties.

"* * *

"The commission again had the valuable services of Mr. George Hess, consulting engineer of Minneapolis, Minnesota. Mr. Hess developed several methods by which the commission could test the accuracy of the observed depreciation computations of the company. All tests found the observed depreciation to be dissimilar to the book depreciation studies upon which the book depreciation is based.

"The commission, after reviewing all the evidence submitted, has come to the conclusion that the RCND valuations percent condition should be brought into closer proximity with the percent condition of the OCD valuations and has done so. This is in line with previous decisions and with the reserve requirement study of Mr. Hess.

- 5 -

"* * *

"All elements of value and the deletions set forth
above have been considered by the commission in deter-
mining the present fair value of the company's natural
gas properties for the test year ending December 31, 1972.
After these considerations the commission finds the pre-
sent fair value of the company's combined natural gas
properties, United States and Canadian, devoted to the
use of the public and actually used and useful for the
convenience of the public at $116,100,000 as of December
31, 1972."

A judicial review would necessarily have to determine whether
the evidence heard by the Commission was substantial, credible
evidence sufficient to uphold its overall findings. Necessarily
included are those parts emphasized by the Commission as heretofore
quoted. In other words, the answers to the particular interroga-
tory examples we have discussed are facts and figures considered
by the Commission in its discussion justifying its results. They
are clearly part of its thought processes.

We have not yet referred to cases cited by the parties.
Petitioner here cites a Colorado case, Public Utility Commission
v. District Court, 163 Colo. 462, 431 P.2d 773, 777, for this
proposition:

"There is a substantial body of law which holds
that officials of an administrative agency can
not be compelled to testify concerning the pro-
cedure or manner in which they made their findings
and rendered a decision in a given case. United
States et al. v. Morgan, 313 U.S. 409, 61 S.Ct.999,
85 L.Ed. 1429. For a collection of authorities on
this principle see 18 A.L.R.2d, Section 10 at page
624. While there are some decisions to the con-
trary we believe that the great weight of authority
prohibits inquiring or probing the mental processes
or procedure by which an administrative decision
is reached, and the only exception to this rule is
where an allegation has been made and there is a
clear showing of illegal or unlawful action, mis-
conduct, bias or bad faith on the part of the com-
missioners or a specific violation of the applicable
statute."

We agree with that statement of the law.

Petitioner also cites the rule of Board of Ed. of Sch.
Dist. No. 6 v. District Court, 174 Colo. 255, 483 P.2d 361,362.
In that case members of a school board were sought to be deposed
after the Board had made its decision. In denying that, the

- 6 -

Colorado Court after quoting from <u>Public Utility Commission</u>, said:

> "If we were to approve of the taking of these depositions, it would mean that on judicial review of any administrative decision the person seeking review could go on a similar 'fishing expedition'."

Under section 70-128(6), R.C.M. 1947, the burden of proof is upon the party attacking or resisting the order of the Commission to show that the order is unlawful or unreasonable. In State ex rel. Olsen v. Public Service Commission, 131 Mont. 104, 113, 308 P.2d 633, this Court stated:

> "Plaintiff next contends that the Commission did not make proper findings.
>
> "The Commission's order contains seventeen findings of fact covering three pages of the transcript.
>
> "Our statutes do not require any findings of fact to be made by the Commission. Where findings are necessary their function is to inform the reviewing court of the basis of the order. [Citing cases]
>
> "The findings made by the Commission here were adequate to inform the court of the basis of its order and are sufficient. * * *."

While it is true that <u>Olsen</u> was prior to the adoption of the civil rules, as we have previously shown the rules are not meant to cover under Rule 81, M.R.Civ.P., special proceedings such as this where the matters are inconsistent or in conflict. Here, the materials sought are privileged and not relevant under Rule 26(b), M.R.Civ.P. Interrogatories seeking amounts, values, costs, and details of parts of property are irrelevant to the main inquiry of "lawfulness" or "reasonableness" of the rates found. A further reason along these lines appears when one considers that if it is sought to discover new or additional evidence that evidence would, under section 70-128, R.C.M. 1947, be resubmitted to the Commission. Such procedures are not consistent and thus under Rule 81 do not apply to the legislative Commission being reviewed here.

We have carefully considered the effect of our ruling here. While we appreciate that detailed answers would indeed make the trial court's review of a voluminous record easier, yet questions obviously designed to probe the mental processes and procedures

of a duly elected administrative body while performing a legislative function are not proper. The rationale of the Colorado Court in the cases heretofore quoted is proper.

Previously we mentioned the motion to quash this Court's alternative writ on the ground that supervisory control is not proper as the remedy by appeal is adequate. Our discussion demonstrates, we believe, that an appeal would not be an adequate remedy. The damage would have been done. The thought or mental processes would already have been probed. Accordingly, the motion to quash is denied.

The writ of supervisory control is granted and the district court ordered to grant the objections to all interrogatories directed to the Commission.

_____
Associate Justice

We Concur:

_____
Chief Justice

_____

_____
Associate Justices.

- 8 -